ATLANTIC & M. G. S. S. CO. v. GUGGENHEIM et al.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

No. 257.

**1. SHIPPING—ACTION FOR DEMURRAGE—DEFENSES.**

Where two vessels, chartered to carry a number of cargoes of coke between two ports, were accepted and loaded under the charter when tendered, and the freight was paid without objection, the charterer cannot set up a claimed breach of the charter in failing to keep the vessels at regular intervals apart as a defense to an action for demurrage for delay in loading where such alleged breach did not cause or contribute to the delay or otherwise cause damage to the charterer.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 587, 596.

Demurrage, see notes to Philadelphia & R. R. Co. v. Peebles, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Haggerman v. Norton, 46 C. C. A. 4.]

**2. SAME.**

Under a charter for the carriage of cargoes of coke which provided that it should be loaded on the vessels "as fast as they can receive the same," the owner is entitled to demurrage for delay in loading caused by the failure of the charterer to have a supply of coke on hand at the port of loading.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 572–574.]

Appeal from the District Court of the United States for the Southern District of New York.

Appeal from a decree allowing the libelant $2,474.46 for demurrage, interest, and costs, growing out of the detention by respondents of libelant's schooners Douglass and Bronson at Pensacola, Fla., on their second charter trip from that place to Tampico, Mex.

For opinion below, see 123 Fed. 330.

Charles S. Haight and John W. Griffin, for appellants.

J. Parker Kirlin and Eliot Tuckerman, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The questions involved received very careful consideration from the District Judge and the commissioner, to whom was referred the question of damages, and but little need be added to their opinions.

Under the agreement, contained in the letters which passed between the parties, the steamship company was to furnish two schooners to carry coke for the Guggenheims from Pensacola, Fla., to Tampico, Mex. The letter of the steamship company, dated July 28, 1898, concludes with the following statement:

"The first vessel is now about to leave Boston for Baltimore to load for Tampico, and proceeds thence to Pensacola, light, to enter on this contract. The second vessel to follow about two or three weeks later. We are to keep the vessels a regular period apart as much as possible, giving you full information as to their movements."

On her second trip the Douglass arrived at Pensacola on Friday, February 17, 1899. She was not loaded until February 27. The

commissioner allowed her demurrage for 6 days and 7½ hours. The Bronson arrived February 21st. Her reasonable time for loading expired on the 25th, when she went on demurrage. The loading was not completed until March 9th. She was allowed demurrage for 12 days and 5½ hours. Assuming that the statement at the close of libelant's letter, above quoted, can be construed into a positive warranty that the facts were as stated, and, also as an unconditional agreement, that the vessels should be kept about two or three weeks apart, the time to have taken advantage of a breach of this character was when the vessels reached Pensacola for the first trip. The Douglass reached there January 16, 1899, and the Bronson three days later. The respondents now contend that the former should have reached Pensacola on September 26, 1898, and the latter about October 10, 1898, and that their failure to do so was a breach of the agreement by the libelant. Notwithstanding this contention, the respondents accepted the schooners.

The inferences to be drawn from this conduct are two:

First. The respondents did not regard the language quoted as anything more than a statement of libelant's information, at the time, of the location of the Douglass and a promise to accede to respondents' wishes, as far as possible, to keep the vessels apart.

Second. If the respondents regarded the language quoted as an express agreement to deliver the vessels not later than October, it would seem that they should not have accepted them in January as a good delivery under the charter.

Two or three months after the charter complaints were made that the vessels were being delayed unduly and the libelant proposed to cancel the charter if respondents wished to do so, provided they would pay the expense to which the libelant had been put in the matter. This was declined and the agreement continued in force. Although various letters passed between the parties and complaints were made by the respondents regarding other matters the suggestion that they had the right of cancellation seems never to have been made, and both parties, after the acceptance of the schooners, proceeded upon the theory that the charter was in force. It is now, we think, too late for the respondents to avail themselves of objections which should have been made in limine. That the three day interval between the arrival of the vessels in January was not regarded as too short may be inferred from the fact that on their first and third voyages the Douglass was loaded in 45 and 36 hours, and the Bronson in 48 and 31 hours, respectively. So long as there was cargo ready for delivery there seems to have been no difficulty in getting it aboard and giving the vessels quick dispatch. The difficulty arose not because the time was limited, but because the supply of coke was limited. The libelant's promise to give the respondents full information of the vessels' movements was faithfully kept. They knew, more than three weeks before the second voyage began, when the vessels would arrive at Pensacola and had ample time to procure cargoes. The vessels were farther apart on this voyage than on the previous one. No complaint was made at any

time that they were not farther apart and no proof has been offered to show that the failure to provide more time between the arrivals of the vessels has caused damage to the respondents.

It will be observed that by no process of construction can the charter be interpreted as containing a positive covenant that the vessels should be kept apart three weeks or two weeks or ten days or any stated period; the language is "a regular period apart as much as possible." We think the libelant fully complied with the agreement unless an entirely unwarranted construction be given it. The proposition that the respondents were relieved of their obligation to supply cargo because of weather conditions is unsupported by proof and is insufficient in law. The charter provided that the coke was to be loaded on the schooners "as fast as they can receive the same." It was not so loaded. The schooners could have received the coke as fast as they did on the first and third voyages and if it had been so delivered there would have been no claim for demurrage.

The respondents seek to construe the charter as if it read:

"The coke is to be loaded on board the vessels as fast as it is received at the wharf of the Louisville & Nashville Railroad Company at Pensacola."

It is enough that it does not so read. The respondents covenanted to supply the schooners with cargo; it was their duty to do so; they failed in this duty and the failure was the sole source of the demurrage.

The master of the Bronson testified:

"Q. What was the reason for this delay in loading? A. Want of cargo. There was no coke there. It would come along in driblets; and some days we would get two cars, some days three and some days not any. Q. Would you be loaded at night during this period if coke came? A. If coke came we would. Q. What sort of weather was it at Pensacola during this second trip? A. The weather was good and mild and pleasant."

Without pursuing the discussion further it suffices to say that we agree with the District Court in the conclusions reached. We are of the opinion:

First. That the statement in the charter that the Douglass "is now [July 28th] about to leave Boston" was not an express warranty that she would reach Pensacola in September or October.

Second. That there was no agreement to keep the vessels apart for two or three weeks or for any stated period.

Third. Assuming that the charter contained such provisions they were conditions precedent which could be waived.

Fourth. That in accepting the vessels without objection and in paying the freight without notice or question, the respondents waived the breach, assuming that there was one.

Fifth. If the language quoted, supra, constituted a condition precedent and if there was a breach by the libelant and no waiver by the respondents it was still incumbent on the latter to prove that they suffered damage by reason of such breach. This they have failed to do.

Sixth. That on the voyage in question the vessels were kept a regular period apart, ample time being allowed to load the first before the arrival of the second, if cargo had been available.

Seventh. That the failure to provide cargo was the fault of the respondents for which the libelant is in no way responsible.

The commissioner, to whom the question of damages was referred, made a careful and conservative report and we agree with the District Judge in thinking that the exceptions thereto are without merit.

The decree is affirmed with interest and costs.